IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STONE METALS AMERICA, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:20-cv-253-K |
| | § | |
| MALCOLM B. EUBANK, III and ZETWERK PVT. LTD, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Defendant Zetwerk Manufacturing Businesses Pvt. Ltd. has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), *see* Dkt. No. 12, which United States District Judge Ed Kinkeade has referred to the undersigned United States magistrate judge for findings, conclusions, and recommendation, *see* Dkt. No. 18.

Zetwerk was sued as Zetwerk Pvt. Ltd. *See* Dkt. No. 1. In its Rule 12(b)(2) motion, it states that its proper name is Zetwerk Manufacturing Businesses Pvt. Ltd.

Plaintiff Stone Metals America, LLC has filed a response, *see* Dkt. No. 16, and Zetwerk has filed a reply, *see* Dkt. No. 17.

For the following reasons, and as explained below, the undersigned concludes that the motion to dismiss should be granted because the Court lacks personal jurisdiction over non-resident defendant Zetwerk.

**Background**

Stone Metals, a Texas limited liability company with its principal place of business in Richardson, Texas, employed Defendant Michael B. Eubank, a Florida resident, as a Regional Sales Manager, *see* Dkt. No. 16-1 at 2. As a requirement of his employment, Eubank executed a Confidential Information and Proprietary Rights Agreement, which strictly limits the disclosure and use of Stone Metals's information. *See* Dkt. No. 4-1; Dkt. No. 6-1 at 2-3.

Zetwerk is a foreign company located in the Republic of India. It posted a job listing on ZipRecruiter for a Business Development Manager "Texas, NY." Dkt. No. 16-2 at 3-4.

Zetwerk communicated with Eubank via email about the position. *See* Dkt. No. 4-2. During negotiations, Zetwerk received emails from Eubank disclosing contacts by "six more companies" and "two additional companies" that sought connections to Indian manufacturers, either because they sought alternatives to Chinese manufacturers or because the Chinese manufacturers had disclaimed an interest in those companies. *See id.* at 8-9.

Eubank accepted the business development manager position and gave notice of his resignation from Stone Metals on November 4, 2019. *See* Dkt. No. 16-1 at 3.

On November 15, 2019, Eubank's last date of employment with Stone Metals, Eubank deleted files consisting of Stone Metals's sales and projects in the company's Dropbox storage. *See id.*; Dkt. No. 16-4. On November 24, 2019, Eubank again logged into Stone Metals's company Dropbox and deleted additional files. *See* Dkt. No. 16-1

at 3; Dkt. No. 16-4. Stone Metals blocked Eubank's access to the company Dropbox the next day. *See* Dkt. No. 16-4 at 4.

On November 25, 2019, Eubank contacted one of Stone Metals's customers using a Zetwerk email address and requested that the customer send him information so he could provide a quote. *See* Dkt. No. 4-4; Dkt. No. 16-1 at 4. The customer replied to Eubank's email address with Stone Metals. *See* Dkt. No. 4-4; Dkt. No. 16-1 at 4.

Stone Metals sued Eubank and Zetwerk for claims arising from Eubank's alleged violations of the Confidential Information and Proprietary Rights Agreement. Stone Metals sued Eubank for breach of contract, conversion, harmful access to computer, and violation of the Computer Fraud and Abuse Act. Stone Metals sued both Eubank and Zetwerk for tortious interference with existing and prospective relations and conspiracy. *See* Dkt. No. 4.

Stone Metals alleges that Zetwerk interfered with its agreement with Eubank by hiring Eubank, accepting Stone Metals's proprietary and confidential information from Eubank, and profiting from it through sales that it would have not obtained otherwise. Stone Metals alleges that Zetwerk conspired with Eubank to steal Stone Metals's proprietary and confidential information with the goal to use that information for their own benefit and profit in direct unlawful competition with Stone Metals. *See id.* at 11-13.

Stone Metals also alleges that Eubank and Zetwerk are jointly and severally liable because "the tortious acts of the Defendants have created an indivisible injury." *Id.* at 16.

Zetwerk contends that Texas courts lacks personal jurisdiction over it. It asserts that Stone Metals fails to establish general jurisdiction because Zetwerk has no contacts with Texas. And Zetwerk argues that Stone Metals fails to establish specific jurisdiction because it has not performed a single act that demonstrates either purposeful availment of the benefits of the forum or conduct purposely directed at Texas. "Instead, [it asserts that] Stone Metals's contentions regarding Zetwerk's connections to Texas hinge solely on its bare allegations regarding" Eubank's conduct. Dkt. No. 13 at 3.

Stone Metals contends that the Court may exercise personal jurisdiction over Zetwerk because Zetwerk allegedly committed intentional torts in Texas by soliciting a business development manager for territory including Texas, hiring Eubank to fill that position, and, through Eubank, accessing Stone Metals's files and contacting Stone Metals's customers. Stone Metals argues that personal jurisdiction may be established by imputing Eubank's conduct to Zetwerk under an agency theory. Stone Metals also requests that the Court defer ruling on the motion and allow limited jurisdictional discovery "if the Court is inclined" to grant the motion to dismiss. Dkt. No. 16 at 12.

The undersigned now concludes that the Court should grant the motion to dismiss and deny Stone Metals's request for jurisdictional discovery.

**Legal Standards**

I.   <u>Personal Jurisdiction</u>

4

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the nonresident. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). If the court decides the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a prima facie case for personal jurisdiction. *See Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

A federal district court may exercise personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "As the Texas long-arm statute extends as far as constitutional due process allows, we only consider the second step of the inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

The due process component of personal jurisdiction requires two elements: (1) the nonresident must have some minimum contact with the forum such that he or she could anticipate being haled into the courts of the forum state, and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The Due Process Clause

ensures that persons have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (internal quotation marks omitted). Personal jurisdiction must be assessed on an individual-defendant basis. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

First, to establish minimum contacts with the forum, a non-resident defendant must do some act by which he "purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (internal quotation marks omitted). But the unilateral activity of one asserting a relationship with the non-resident defendant does not satisfy this requirement. *See id.* at 474; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Second, in determining whether the exercise of jurisdiction is appropriate, the United States Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's purposeful contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *See Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992). Thus, "[i]n determining whether or not exercise of jurisdiction is fair and reasonable, defendants bear the burden of proof and 'it is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown.'" *McFadin*, 587 F.3d at 759-60 (quoting *Wien Air Alaska, Inc., v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ).

Five factors guide a court's analysis of whether exercising personal jurisdiction is fair and reasonable: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006).

Two types of personal jurisdiction may be exercised over a non-resident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *See J.R. Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 871 (5th Cir. 2000). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). "Second, [the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (citations omitted). Specific jurisdiction is a "claim-specific inquiry," so a plaintiff must establish specific

jurisdiction for each claim asserted. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 343 (5th Cir. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006)).

General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 41-16. The Supreme Court has observed that the proper consideration when determining general jurisdiction is "whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) ) (alteration in original). The Supreme Court held that, as to a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id.* at 760. It is, therefore, "incredibly difficult" to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *Monkton Ins. Servs.*, 768 F.3d 429, 2014 WL 4799716, at *2. A nonresident that merely does business with Texas businesses or customers will not be subject to general jurisdiction here unless it also has a lasting physical presence in the state. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999); *see also Johnston*, 523 F.3d at 614 (general jurisdiction not conferred simply by advertising within a state or traveling to the state at regular intervals).

Under both specific and general jurisdiction analyses, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.' " *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the non-resident defendant and the forum state. *See Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992).

II. <u>Jurisdictional Discovery</u>

When seeking discovery on personal jurisdiction, a plaintiff must make a "preliminary showing of jurisdiction" before being entitled to such discovery. *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 429 (5th Cir. 2005). The decision to allow jurisdictional discovery is within the district court's discretion. *See id.* "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 855 (5th Cir. 2000) (citation omitted). A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction. *See Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC,* No. 4:11–cv–

9

629–A, 2012 WL 104980, at *7 (N.D. Tex. Jan.11, 2012) (citing *Kelly,* 213 F.3d at 855). A court is entitled to deny leave to conduct jurisdictional discovery where the movant fails to specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction. *See id.; see also King v. Hawgwild Air, LLC,* No. 3:08–cv–153–L, 2008 WL 2620099, at *8 (N.D. Tex. June 27, 2008). A court may also deny jurisdictional discovery where the plaintiff only offers speculation as to jurisdiction and where the plaintiff is waging a "fishing expedition" into jurisdictional facts. *Combat Zone Corp. v. John/Jane Does 1–13,* No. 3:12–cv–3927–B, 2013 WL 230382, at *2 (N.D. Tex. Jan. 22, 2013) (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 402 (4th Cir.2003)).

## Analysis

I. <u>Stone Metals fails to establish personal jurisdiction.</u>

The undersigned finds that Stone Metals has failed to establish a *prima facie* case that either general or specific jurisdiction exists over nonresident defendant Zetwerk.

A. <u>Stone Metals fails to establish general jurisdiction.</u>

Although Stone Metals contends that it "appears" that there is general jurisdiction, Dkt. No. 16 at 10, Stone Metals fails to establish that Zetwerk was "at home" in the State of Texas or had a lasting physical presence here, *Goodyear Dunlop Tires,* 131 S. Ct. at 2854. There is no evidence before the Court that Zetwerk has any contacts with Texas, much less that any contacts are continuous and systematic such that the Court may exercise general jurisdiction over an action

against Zetwerk regardless of whether the action is related to Zetwerk's contact with the forum. *See Helicopetros Nacionales de Colombia, S.A.,* 466 U.S. at 414-15.

Zetwerk is a foreign company incorporated in the Republic of India with its principal place of business in Bengaluru, India. Its goal is "to provide reliable and predictable supply of high-quality manufactured products to our customers across the world," Dkt. No. 16-3 at 3, and its "long-term vision is to build an Amazon of Manufacturing, catering to global demand through a global supply footprint," Dkt. No. 16-2 at 4.

Zetwerk maintains no offices, neither owns nor leases property, and has no bank accounts, employees, suppliers, or vendors in Texas. It has never been a Texas corporation, applied for or held a certificate to do business in Texas, or appointed an agent for service of process in Texas. *See* Dkt. No. 14-1. It has "customers across the world," including in North America. Dkt. No. 16-3 at 3. But, at the time that Zetwerk filed its motion to dismiss, it did not and had never had any Texas clients and had not profited from sales to a Texas company." Dkt. No. 13-1 at 1.

Zetwerk's job posting on an internet website for a Business Development Manager "Texas, NY" does not support a finding of general jurisdiction. *See CDx Holdings, Inc. v. Goldenson,* No. 3:12-cv-394-N-BH, 2012 WL 1308985, at *4 (N.D. Tex. Oct. 26, 2012) (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 376 (5th Cir. 1987)).

In determining whether general jurisdiction exists, courts do not examine each of a non-resident's contacts with the forum state in isolation from one another but must examine them "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986). Here, they do not.

B.  <u>Stone Metals fails to establish specific jurisdiction.</u>

Stone Metals contends that the Court has specific jurisdiction because Zetwerk committed intentional torts in Texas. Stone Metals alleges that Zetwerk conspired with Eubank to steal Stone Metals's proprietary and confidential information and used that information to tortiously interfere with Stone Metals's relationships with current and prospective clients.

Stone Metals argues that personal jurisdiction can be based on imputing Eubank's Texas contacts to Zetwerk under an agency theory. *See Alliantgroup, L.P. v. Feingold*, CIV. A. H-09-0479, 2009 WL 2498551, at *6 (S.D. Tex. Aug. 12, 2009) (citing cases holding that an agent's jurisdiction contacts may be imputed to the principal).

Zetwerk argues that Eubank's actions cannot be imputed to it because Eubank is an independent contractor. *See O'Quinn v. World Indus. Constructors, Inc.*, 874 F. Supp. 143, 145 (E.D. Tex. 1995) (citing *Smith v. Piper Aircraft Corp.*, 425 F.2d 823, 826 (5th Cir. 1970)). Zetwerk asserts that, contrary to Stone Metals's allegations, Eubank is not and has never been a Zetwerk employee. Zetwerk explains that it

12

engaged Safeguard International Limited, who in turn engaged Precision Global Consulting to hire Eubank as an independent contractor. *See* Dkt. No. 13-1. Construing this disputed fact in Stone Metals's favor, as the Court must do for purposes of this motion to dismiss, the undersigned will consider Eubank to be a Zetwerk employee.

The inquiry whether this Court may assert specific jurisdiction over nonresident defendant Zetwerk focuses on the relationship among Zetwerk, Texas, and the litigation, and it is Zetwerk's suit-related conduct that must create the connection with Texas. *See Walden*, 571 U.S. at 283-84. And the minimum contacts analysis looks to Zetwerk's contacts with Texas, not Zetwerk's contacts with someone who has contacts with Texas. *See id.* at 284.

Zetwerk's contacts with Texas are too tenuous to establish specific jurisdiction. Zetwerk solicited a business development manager for a region including but not limited to Texas. The person hired to fill the position was a Florida resident whose only Texas connection was the location of his former employer.

And, even if specific jurisdiction could be established through an agency relationship, Stone Metals does not indicate what Texas contacts may be imputed to Zetwerk as Eubank's employer. Zetwerk and Eubank exchanged emails about the job while Eubank was in Florida. There was no contact between Zetwerk and Eubank in Texas. During negotiations, Zetwerk received two emails from Eubank stating that he had been contacted by eight unnamed companies seeking products from India. Stone Metals does not allege that any of those companies was in Texas. Eubank

deleted some of Stone Metals's sales and projects files on his last day of employment with Stone Metals and after he went to work for Zetwerk. But Stone Metals does not allege that those files were for sales and projects in Texas. Eubank also solicited one of Stone Metals's clients in his capacity as Business Development Manager of Zetwerk, but that customer was not located in Texas. *See* Dkt. No. 4-4.

Stone Metals has failed to make a prima facie case of specific jurisdiction.

II.  <u>The Court should deny the request for jurisdictional discovery.</u>

Stone Metals requests limited jurisdictional discovery "if the Court is inclined to grant" the motion to dismiss. It seeks an opportunity to discover additional jurisdictional "facts surrounding Zetwerk's business development and expansion generally in Texas, and specifically with Eubank." Dkt. No. 16 at 12.

Zetwerk objects to this request because it "appears to be based on speculation that additional facts establishing jurisdiction may exist if Stone Metals is provided the broad and potentially invasive" discovery sought. Dkt. No. 17 at 7. It also objects because Stone Metals does not dispute the facts showing that Zetwerk has no contacts with Texas "but instead vaguely suggest there *may be* some fact that would support jurisdiction." *Id.* (emphasis in original).

Stone Metals is not entitled to jurisdictional discovery because it has not made a preliminary showing of personal jurisdiction. *See Fielding*, 415 F.3d at 429. And the Court need not allow a plaintiff to conduct a jurisdictional "fishing expedition" seeking facts to support a claim of personal jurisdiction. *See Best Little Promohouse*

*in Tex. LLC v. Yankee Pennysaver, Inc.*, 3:14-cv-1824-BN, 2014 WL 5431630, at *8 (N.D. Tex. Oct. 27, 2014).

## Recommendation

The Court should grant Properly Named Defendant Zetwerk Manufacturing Businesses Pvt. Ltd.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) [Dkt. No. 12] and should dismiss with prejudice Stone Metals's claims against Zetwerk.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 5, 2020


_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

